IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH BAVARO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| CITY OF CHICAGO, | ) | |
| CHICAGO POLICE OFFICER | ) | |
| JOSEPH CHAUSSE (Star No. 10082), | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES Plaintiff, JOSEPH BAVARO ("Plaintiff" or "Plaintiff Bavaro"), by and through his attorneys, Barney & Hourihane, LLP, and complaining of Defendants, CITY OF CHICAGO ("City") and CHICAGO POLICE OFFICER JOSEPH CHAUSSE ("Defendant Officer" or "Defendant Officer Chausse"), states as follows:

## INTRODUCTION

1.    This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a), the Constitution of the United States, and this Court's supplemental jurisdiction powers.

1

3.     Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

## PARTIES

4.     Plaintiff Joseph Bavaro is veteran of the United States Marine Corps who served active combat duty in Operation Iraqi Freedom, and currently resides on the south side of Chicago, Illinois, within the Northern District of Illinois, Eastern Division.

5.     On information and belief, Defendant Officer Joseph Chausse is, and was at all times complained of herein, employed by the City of Chicago as a police officer.

6.     The City of Chicago is a duly incorporated municipal corporation within the Northern District of Illinois and is the employer and principal of Defendant Officer Chausse.

7.     At all times material to this Complaint, Defendant Officer Chausse was acting within the scope of his employment and under color of state law, ordinance, and/or regulation, statutes, custom, and usage of the City of Chicago.

## BACKGROUND

8.     On or about the evening of March 30, 2019, Plaintiff drove his vehicle to a 7-11 convenience store located at or near 3152 W. 111th Street, Chicago, Illinois 60655, arriving at approximately 9:00 p.m.

9.     Plaintiff lawfully parked his vehicle, which was a pick-up truck, in the

handicap parking spot that was located in close proximately to the front entrance to the store.

10.     Plaintiff is currently disabled due to injuries sustained while serving a tour of duty in Iraq, and so has lawfully obtained a handicap parking permit/ placard for his vehicle through the Illinois Secretary of State.

11.     On the date of the incident described in this Complaint, the license plate on Plaintiff's vehicle was a Disabled Handicap Veteran license plate issued by the Illinois Secretary of State, and was displayed conspicuously on Plaintiff's vehicle.

12.     Plaintiff is, and was at all times relevant to this Complaint, permitted by law to park in parking spaces designated for persons with disabilities.

13.     After parking in the 7-11 parking lot, Plaintiff encountered Defendant Chausse when Defendant Chausse approached Plaintiff's vehicle.

14.     Defendant Chausse appeared upset and approached the driver's door of Plaintiff's vehicle in an aggressive manner.

15.     Defendant Chausse banged on Plaintiff's front driver's side window with his hand or fist and began yelling at Plaintiff.

16.     Plaintiff rolled down his window so that he could hear Defendant Chausse.

17.     Among other things, Defendant Chausse told Plaintiff to "move his fucking car," or words to that effect.

18.     Plaintiff, who was lawfully parked, refused to move his vehicle.

3

19.     Defendant Chausse then told Plaintiff that he, Defendant Chausse, was a Chicago Police Officer, and ordered Plaintiff to exit his vehicle.

20.     Defendant Chausse then threatened that he would "kick" Plaintiff's "ass," or words to that effect.

21.     Plaintiff, fearful of being attacked, remained inside his vehicle.

22.     Defendant Chausse then stepped onto the running board of Plaintiff's vehicle, reached inside the open driver's side window, and attempted to strike Plaintiff.

23.     Defendant Chausse then opened the driver's door to Plaintiff's vehicle and grabbed Plaintiff in an aggressive manner.

24.     Defendant Chausse then attempted to pull Plaintiff out of the vehicle.

25.     Eventually, Plaintiff was forced to exit his vehicle.

26.     After Plaintiff exited his vehicle, and while still in the 7-11 parking lot, Defendant Chausse began striking Plaintiff with his fists.

27.     During this time, Defendant Chausse continued to tell Plaintiff that he was a Chicago Police Officer.

28.     At some point during the confrontation, Defendant Chausse pulled out his Chicago Police Department police badge and threatened to arrest Plaintiff and other individuals who were in the parking lot and witnessing the incident.

29.     Plaintiff had committed no crimes or taken any other action which would justify Defendant Chausse's actions.

30.     Plaintiff suffered injuries as a result of Defendant Chausse's attack.

31. At least part of this incident was caught on the 7-11 security video.

32. Eventually, Plaintiff was able to call 9-11.

33. Plaintiff was also able to obtain the contact information of a witness who was in the parking lot at the time of the incident.

34. At some point thereafter, other Chicago Police Officers arrived on scene.

35. After speaking with Plaintiff, a supervising Chicago Police Officer told Plaintiff that Defendant Chausse would not be arrested because it was Plaintiff's word against Defendant Chausse's.

36. Plaintiff requested that the supervising officer review the 7-11 security camera footage and told the officer that there were other witnesses to the incident.

37. The supervising officer then spoke by phone with the witness whose contact information Plaintiff was able to obtain.

38. After the supervising officer spoke with the witness and reviewed the 7-11 surveillance video footage, Defendant Chausse was placed under arrest.

39. Plaintiff continued to tell the investigating officers that he wanted to pursue criminal charges against Defendant Chausse.

40. Plaintiff then relocated to the Chicago Police Department police station located in District 11 to ensure that Defendant Chausse was charged.

41. At District 11, Plaintiff was again interviewed regarding the incident, and Plaintiff confirmed that he wanted to pursue charges.

42. The officers investigating the incident were aware at that time that

Defendant Chausse was a Chicago Police Officer.

43. At some point after Plaintiff expressed his desire to pursue criminal charges, and while at the police station, a supervising Chicago police officer who was assisting with the investigation asked Plaintiff if the matter could be resolved without criminal charges against Defendant Chausse.

44. The supervising officer also relayed to Plaintiff that he wanted Plaintiff to speak with Defendant Chausse about the incident before Plaintiff moved forward with criminal charges.

45. At the behest of the officer, Plaintiff agreed to speak with Defendant Chausse.

46. Plaintiff was then taken to an office in another part of the police station.

47. When Plaintiff entered the office, there were several police officers present and Defendant Chausse was sitting in a chair at a table.

48. Defendant Chausse was not handcuffed or restrained in any way.

49. Plaintiff felt uncomfortable with the situation and immediately exited the office.

50. Plaintiff repeatedly told Chicago Police Officers, including the supervising officer who was involved in the investigation, that he, Plaintiff, wanted to press charges.

51. Eventually, Plaintiff was presented with a criminal complaint, which charged Defendant Chausse with simple battery.

6

52.     Plaintiff believed that the complaint may have contained an inaccuracy, and so he asked that the narrative section of the complaint be changed.

53.     The officers investigating the incident refused to change the language in the complaint, and eventually told Plaintiff that if he wanted to pursue criminal charges he would have to do it through the detectives division.

54.     At some point in the next week to two weeks, Plaintiff's case was reassigned to Detective Frederick Hasenfang.

55.     Detective Hasenfang refused to further investigate the incident and suspended any further action on the case.

56.     Defendant Chausse was never charged with a crime for the conduct described above in this Complaint.

## COUNT 1
### 42 U.S.C. § 1983 Claim: Illegal Seizure
### (Plaintiff against Defendant Officer Chausse)

57.     Plaintiff re-alleges each of the preceding paragraphs as if fully restated herein.

58.     Defendant Officer seized Plaintiff in that Plaintiff's freedom of movement was restrained by Defendant Officer's use of physical force and show of authority.

59.     Due to Defendant Officer's conduct described above, Plaintiff was not free to terminate the encounter with Defendant Chausse.

60.     Defendant Officer's actions interfering with Plaintiff's freedom of movement were done without probable cause, reasonable suspicion, or any other

legal justification.

61.     Defendant Officer's seizure of Plaintiff violated Plaintiff's constitutional rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution.

62.     Defendant Officer's actions were unreasonable, willful, wanton, malicious, and were undertaken with reckless indifference to Plaintiff's rights as secured by the Fourth Amendment to the United States Constitution, and hence in violation of 42 U.S.C. § 1983.

63.     The constitutional violation described herein was a direct and proximate result of Defendant Officer's actions, and Plaintiff suffered injuries as a result of those actions, including pain, suffering, and emotional distress.

**COUNT 2**
**42 U.S.C. § 1983 Claim: Illegal Search**
**(Plaintiff against Defendant Officer Chausse)**

64.     Plaintiff re-alleges each of the preceding paragraphs as if fully restated herein.

65.     Defendant Officer's entry into Plaintiff's vehicle was without Plaintiff's consent or the consent of any other person with authority.

66.     Further, at all times relevant to this Complaint, no arrest or search warrant existed which would authorize Defendant Officer to enter into Plaintiff's vehicle.

67.     Defendant Officer lacked probable cause, reasonable suspicion, or any other legal justification that would authorize him to enter Plaintiff's vehicle.

8

68. Defendant Officer's entry into Plaintiff's vehicle violated Plaintiff's constitutional rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution.

69. Defendant Officer's entry in Plaintiff's vehicle was unreasonable, willful, wanton, malicious, and done with reckless indifference to Plaintiff's rights as secured by the Fourth Amendment to the United States Constitution, and hence in violation of 42 U.S.C. § 1983.

70. The constitutional violation described herein was a direct and proximate result of Defendant Officer's actions, and Plaintiff suffered injuries as a result, including pain, suffering, and emotional distress.

## COUNT 3
### 42 U.S.C. § 1983 Claim: Excessive Force
### (Plaintiff against Defendant Officer Chausse)

71. Plaintiff re-alleges each of the preceding paragraphs as if fully restated herein.

72. The force used against Plaintiff by Defendant Chausse was unreasonable and excessive.

73. As a result of Defendant Chausse's unreasonable, unjustified, and excessive use of force, Plaintiff suffered pain and injury, as well as emotional distress.

74. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights.

9

75.     This conduct violated the Fourth and Fourteenth Amendments to the United States Constitution, and hence 42 U.S.C. § 1983.

76.     The constitutional violation described herein was a direct and proximate result of Defendant Officer's actions, and Plaintiff suffered injuries as a result of those actions, including pain, suffering, and emotional distress.

**COUNT 4**
***Monnell* Claim: 42 U.S.C. § 1983**
**(Plaintiff against Defendant City of Chicago)**

77.     Plaintiff re-alleges each of the above paragraphs as if fully stated herein.

78.     The misconduct described in this Complaint was undertaken pursuant to the policy and practice of the City of Chicago by its Police Department in that:

    a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that is failure to do so manifests deliberate indifference;

    b. As a matter of policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff;

    c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiffs in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

    d. As a matter of policy and practice, the Chicago Police Department makes its officers aware that if there are no corroborating witnesses or evidence which support a complainant's version of the events in

question, a complaint of excessive force will never be sustained against them;

e. Municipal policymakers are aware of (and condone and facilitate by their inaction) a "code of silence" in the Chicago Police Department by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case;

f. The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

79. In addition to the facts cited above, Plaintiff also submits the following in support of his *Monell* claim:

a. The jury verdict in *Obrycka et al. v. City of Chicago, et al.*, No. 07cv2372 (N.D. Ill.), in which a jury found that a code of silence and/or a widespread custom of failing to adequately investigate, discipline, and supervise officers existed within the ranks of the Chicago Police Department;

b. The jury verdict in *Laporta v. City of Chicago*, *et al.*, No. 14cv9665 (N.D. Ill.), in which a jury found that a code of silence and/or a widespread custom of failing to adequately investigate, discipline, and supervise officers existed within the ranks of the Chicago Police Department;

c. A statement made by Chicago Mayor Rahm Emanuel during a December 2015 press conference acknowledging a prevailing "code of silence" within the Chicago Police Department;

d. A statement made by Chicago Mayor Rahm Emanuel in December of 2015 during an appearance on "Chicago Tonight" wherein he directly acknowledged that a "code of silence" exists within the City of Chicago and, specifically, the Chicago Police Department;

e. A statement made in 2013 by previous Superintendent of the Chicago Police Department Jody Weis, wherein Weis stated, "The culture here is if you get in trouble, if there's an administrative inquiry, you can lie and do whatever you can to get out of it because the penalty for lying will never be greater than the trouble you're in." Weis also stated, "The 'Thin Blue Line,' . . . to say it doesn't exist, is naive."

11

80.    As a direct result of the aforementioned, which was the moving force behind the Constitutional violations set forth above, Plaintiff suffered damages, including emotional distress.

### COUNT 5
### Illinois State Law Claim: Battery
### (Plaintiff against Defendant Officer Chausse)

81.    Plaintiff re-alleges each of the preceding paragraphs as if fully restated herein.

82.    As described more fully in the preceding paragraphs, Defendant Officer knowingly and intentionally grabbed and struck Plaintiff without Plaintiff's consent or any other legal justification.

83.    Defendant Officer's conduct was done knowingly, intentionally, and with malice.

84 .    As a direct and proximate cause of Defendant Officer's conduct, Plaintiff sustained injuries, including pain, suffering, and emotional distress.

85.    As described above, the Defendant Officer's conduct was undertaken within the scope of his employment such that his employer, City of Chicago, is liable for his actions.

### COUNT 6
### Illinois State Law Claim: False Imprisonment
### (Plaintiff against Defendant Officer Chausse)

86.    Plaintiff re-alleges each of the preceding paragraphs as if fully restated herein.

87.    The actions taken by Defendant Officer as described above restrained

Plaintiff's freedom of movement.

88.     Defendant Officer's actions in restraining Plaintiff were done without reasonable grounds, reasonable suspicion, probable cause, or any other legal justification.

89.     The actions of Defendant Officer were undertaken willfully, wantonly, maliciously, and with reckless indifference to Plaintiff's rights.

90.     As described above, the Defendant Officer's conduct was undertaken within the scope of his employment such that his employer, City of Chicago, is liable for his actions.

### ***Respondeat Superior***

91.     Plaintiff re-alleges each of the preceding paragraphs as if fully restated herein.

92.     In committing the acts alleged in the preceding paragraphs, Defendant Officer was acting as a members and agent of the City of Chicago and acting at all relevant times within the scope of his employment.

93.     Defendant City of Chicago is liable as principal for all torts committed by its agents.

### **Indemnification**

94.     Plaintiff re-alleges each of the preceding paragraphs as if fully restated herein.

95.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the

scope of their employment activities.

96.     Defendant Officer is an employee of the Chicago Police Department and was acting within the scope of his employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, JOSEPH BAVARO, respectfully request that this Court enter judgment on all claims in HIS favor and against Defendants, CITY OF CHICAGO and DEFENDANT OFFICER CHAUSSE, awarding compensatory damages and attorneys' fees along with punitive damages against the DEFENDANT OFFICER CHAUSSE in his individual capacity, as well as any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, JOSEPH BAVARO, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

*/s/ Ian M. Barney*
Attorney for Plaintiff

IAN M. BARNEY
Barney & Hourihane, LLP
874 Green Bay Road, Suite 320
Winnetka, Illinois 60093
Tel: 312-854-0906
E: ian@barneyhourihane.com